**[J-28-2017] [MO: Dougherty, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MISSION FUNDING ALPHA, | : | No. 2 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 313 FR |
| | : | 2012 dated January 14, 2016, exited |
| v. | : | January 15, 2015, overruling the |
| | : | Commonwealth's exceptions and |
| | : | entering judgment of the December 10, |
| COMMONWEALTH OF PENNSYLVANIA, | : | 2015 order that reversed the decision of |
| | : | the Board of Finance and Revenue |
| Appellant | : | dated March 27, 2012 and exited on |
| | : | March 30, 2012 at No. 1118798. |
| | : | |
| | : | ARGUED: May 9, 2017 |

**DISSENTING OPINION**

**JUSTICE MUNDY** **DECIDED: November 22, 2017**

I respectfully disagree with the Majority that Mission Funding Alpha (MFA) did not satisfy the three-year tax refund period provided in 72 P.S. § 10003.1(a). Instead, I would affirm the Commonwealth Court's decision that MFA did satisfy the statute's three-year tax refund period, but on slightly different grounds. Unlike the Commonwealth Court, I do not agree that "'actual payment of the tax' cannot occur until the annual tax report is filed." *Mission Funding Alpha v. Commonwealth*, 129 A.3d 614, 619 (Pa. Cmwlth. 2015). Instead, I believe that "actual payment of the tax" occurs when a corporation finalizes and satisfies its tax obligation, which is often accompanied by payment and the filing of a tax report.

In this case, our only task is to interpret the phrase "actual payment of the tax" within the meaning of Section 10003.1(a).[1]  The Majority, however, adopts the issue as presented by the Commonwealth, namely:  "[w]here a taxpayer pays the tax on the date it is due but does not file its annual report until several months later, does the three-year refund period commence on the date the tax was paid, rather than the date that the annual report was filed?"  Majority Op. at 7 (quoting Appellant's Brief at 4).

In my view, framing the issue in this manner unfairly focuses on the date the annual tax report was filed.  Instead, this Court should focus on the date MFA finalized and satisfied its tax liability: September 19, 2008.  The fact that MFA finalized and satisfied its tax obligation on the same day it filed its annual tax report is typical because many corporations do not make final tax liability calculations until they file their annual tax reports.  However, this will not always be the case.  For example, had MFA filed its annual tax report on September 19, 2008 and remitted payment for its final tax liability on October 18, 2008, then MFA's tax refund period would have begun on October 18, 2008, the date of the "actual payment of the tax."

Similarly, it is not possible for a company like MFA to make an "actual payment of the tax" until it finalizes its tax liability.  Logically, until MFA completed the relevant tax calculations, neither MFA nor the Commonwealth knew the status of MFA's tax obligation, making it impossible for MFA to make an "actual payment of the tax." *Mission Funding Alpha*, 129 A.3d at 619.  As the Commonwealth Court highlighted, "[The Board of Finance and Revenue] acknowledge[d] that MFA did not know its total

---

[1] "Except as otherwise provided by statute, a petition for refund must be made to the [D]epartment *within three years of actual payment of the tax*, interest or penalty."  72 P.S. § 10003.1(a) (emphasis added).

tax liability as of April 15, 2008, but had paid enough to avoid interest when on September 19, 2008, it knew the actual payment due and filed its annual tax report." *Id.*

The Majority holding that MFA cannot make an "actual payment of the tax" until it finalizes its tax liability is consistent with 72 P.S. § 10003.2(b)(6). "Section 3003.2(b)(6) of the Tax Reform Code defines 'total tax' as '[t]he total tax liability of the taxpayer for the tax period including the tax reported by the taxpayer and settled, resettled or assessed by the [D]epartment.'" *Mission Funding Alpha*, 129 A.3d at 618 (quoting 72 P.S. § 10003.2(b)(6)). Accordingly, "although April 15th is the date upon which taxes are due without interest and/or penalty [] the Tax Reform Code expressly affords corporate taxpayers the opportunity to make their final tax payments [] after their tax liabilities are known[.]" *Id.* at 619 (quoting 72 P.S. §§ 7403(c)–(d), 7410, 7603). Therefore, MFA's "actual payment of the tax" did not occur until September 19, 2008, when it finalized its tax liability and settled its tax obligation. Just because no money changed hands, does not mean that the "actual payment of the tax" did not occur.

I believe the Majority focuses too much on whether the taxes were "paid" as opposed to whether there was an "actual payment of the tax." These are two distinct acts. The process for calculating interest set forth in 72 P.S. § 7403(c) helps illustrate the difference. Simply put, taxes must be paid by April 15, and those unpaid bear interest. *See* 72 P.S. § 7403(c). However, the Commonwealth cannot compute interest owed on late taxes until the company determines its final tax liability. *Id.* (stating that the interest will be calculated on the amount of taxes owed). Therefore, the Majority is correct that the Commonwealth accepted MFA's estimated taxes as paid on April 15th. However, on that date no "actual payment of the tax" occurred because MFA had not finalized its tax liability and satisfied its obligation. As a result, until September 19, 2008, the Commonwealth had no basis on which to charge MFA interest. Finally, when

MFA did finalize and satisfy its tax obligation in September (making an "actual payment of the tax"), MFA owed no interest because its estimated payments and previous credit carried forward exceeded its final tax liability.

Next, I believe the approach applied by the Majority would in effect usurp a corporation's statutory right to pay its taxes late. The Majority relies heavily on the language from 72 P.S. § 10003.2(c)(2) to conclude that all taxes are due on April 15 regardless of whether a corporation files an extension. Majority Op. at 18. I do not disagree with this conclusion. However, I do think the Majority fails to adequately consider the conflicting language of 72 P.S. §§ 7403(b)-(d). Section 7403(b) requires corporations to make their final payment of tax with their annual tax report. 72 P.S. § 7403(b). Section 7403(c) specifically provides that taxes not paid on or before April 15 will accrue interest. *Id.* § 7403(c). Finally, Section 7403(d) imposes penalties on corporations for failing to file required reports. *Id.* § 7403(d). What the Majority fails to account for in their analysis is that Sections 7403(c)-(d) give taxpayers the choice to file their taxes late, so long as they are willing to pay interest and penalties. Therefore, by reversing the Commonwealth Court's decision, the Majority prevents taxpayers from exercising their right to choose.

In addition, I find persuasive MFA's reliance on *Calvert Distillers Corp. v. Board of Finance and Revenue*, 63 Dauph. 312 (Dauph. Cnty. 1952), *aff'd*, 103 A.2d 668 (Pa. 1954), because there is a notable distinction between "actual payment of the tax" and "payment." *See Calvert*, 63 Dauph. at 323 (providing that "[t]he Act does not say 'within two years of the payment of such tax' or of 'the tax' or of 'said monies' or 'said amounts.' The Legislature carefully avoided using the word 'tax', or 'such tax' as was used in Section 3228 of the Federal Revised Statutes[]"). MFA claims the *Calvert* Court held

that in 72 P.S. § 503(a)[2], the legislature avoided "using the word 'tax' or 'such tax' that was used in the federal law and it clearly intended to distinguish between 'payment' and 'tax.'" Appellee's Brief at 11. As a result, during the *Calvert years*, "Pennsylvania's time limit on tax refund petitions hinged on the date monies were paid[,] regardless of whether [a] definite tax liability had been established." *Id.* at 12. However, MFA argues this all changed in 1997, when the legislature amended the statutory language from "payment" to "actual payment of the tax." *Id.* I agree.[3]

Therefore, I would affirm the Commonwealth Court's decision because MFA finalized and satisfied its tax obligation on September 19, 2008, which constituted the "actual payment of the tax" within the meaning of Section 10003.1(a). I believe the

---

[2]          **§ 503. Refunds of state taxes, license fees, et cetera.**

(a) *All such petitions for refund must be filed with the board within two years of the payment of which refund is requested*, or within two years of the settlement in the case of taxes or bonus, whichever period last expired. . . .

72 P.S. § 503(a). (emphasis added) The editors' notes provide that subsection (a) was repealed by 1997, May 7, P.L. 85, No. 7, § 35.1(b).

[3] Because of the statutory language change in 1997, I disagree with Justice Donohue's concurrence that had MFA made insufficient quarterly payments and an additional late payment along with its annual tax report, it could only request a refund to the extent of the late payment. Concurring Op. of Donohue, J. at 6. This is not the right result because it returns us to *Calvert's* payment approach, which the legislature specifically eliminated in 1997. In addition, I respectfully disagree that if the Commonwealth Court opinion were correct that MFA did not actually pay its taxes until it filed its annual tax report, then the Department of Revenue would have charged MFA interest for its late payment. *Id.* at 4. This statement fails to appreciate the distinct nature between a "payment" and an "actual payment of the tax." The Commonwealth did not impose interest because when MFA determined its final tax liability in September, it became clear that MFA had already satisfied its obligation through the estimated payments and credit carried forward from a prior year. Accordingly, while MFA did pay its taxes in April, the "actual payment of the tax" occurred in September, when MFA finalized its tax liability and satisfied its obligation.

legislature statutorily affords taxpayers the right to pay their taxes late, albeit subject to interest and penalties. I believe the "actual payment of the tax" language has a special meaning in the law, which our legislature sought to incorporate when it amended the relevant statutory language in 1997. Finally, I do not imagine the legislature intended to go back to the *Calvert* approach of tying refunds to specific payments. Accordingly, I respectfully dissent.