Mission Funding Alpha, : 
                   Petitioner : 
                                 : 
      v. : 
                                 : 
Commonwealth of Pennsylvania, :   No. 313 F.R. 2012
                 Respondent :   Argued: September 16, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
            HONORABLE BERNARD L. McGINLEY, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                      FILED: December 10, 2015


Mission Funding Alpha (MFA) petitions this Court for review of the Board of Finance and Revenue's (Board) March 27, 2012 order sustaining the Board of Appeals' (Appeals Board) order dismissing MFA's Pennsylvania Foreign Franchise Tax (Franchise Tax) refund claim as untimely. The sole issue before the Court is whether the Board erred in concluding that April 15, 2008 was the date on which MFA made its "actual payment of the tax" under Section 3003.1(a) of the Tax Reform Code of 1971 (Tax Reform Code).[1] Upon review, we reverse.

Pursuant to Rule 1571(f) of the Pennsylvania Rules of Appellate Procedure, the parties stipulated:[2] MFA is a calendar-year taxpayer that conducted

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by Section 14 of the Act of July 1, 1985, P.L. 78, 72 P.S. § 10003.1(a).

[2] There is no record in appeals from Board determinations; rather, the facts and issues are stipulated by the parties. Pa.R.A.P. 1571(f).

business for the year ending December 31, 2007 (2007 Tax Year) and was subject to Franchise Tax. During the 2007 Tax Year, MFA remitted quarterly estimated payments to its 2007 Franchise Tax account totaling $430,000.00 for its 2007 Tax Year liabilities. A $32,297.00 credit overpayment was also carried forward for MFA's 2007 Tax Year. As of April 15, 2008, MFA's estimated payments and deposited credits totaled $462,297.00. Without having sought an extension, MFA filed its Corporate Tax Report (PA RCT-101) on September 19, 2008, reporting therein its total tax liability of $380,519.00 (consisting of a $66,344.00 Franchise Tax liability and a $314,175.00 Corporate Net Income Tax liability). After all tax credits and deposits were applied to the 2007 Tax Year liability, there remained an $81,778.00 overpayment. MFA elected to have the Department of Revenue (Department) transfer the overpayment for application to its tax year ending December 31, 2008 (2008 Tax Year). The Department transferred the overpayment, accepted MFA's Franchise Tax liability and imposed a $913.00 late-filing penalty because MFA did not request a filing extension and did not file its Corporate Tax Report by April 15, 2008.[3]

On September 16, 2011, MFA filed a Petition for Refund (Petition) of its Franchise Tax with the Appeals Board. On September 20, 2011, the Appeals Board dismissed the Petition as untimely. On December 15, 2011, MFA appealed from that decision to the Board. On February 22, 2012, the Board notified MFA that its untimely Petition was a jurisdictional defect that had to be resolved before it could review the merits. By March 8, 2012 letter to the Board, MFA explained why its

---

[3] Although the funds were remitted "[a]s of April 15, 2008," the parties' Stipulation of Facts does not specify when the Department transferred and accepted the funds. Stipulation of Fact ¶ 10.

2

Petition was timely filed. By March 27, 2012 order, the Board sustained the Appeals Board's decision. MFA appealed to this Court.[4]

> Initially, Section 3003.1(a) of the Tax Reform Code provides:
>
>> For a tax collected by the [Department], a taxpayer who has actually paid tax, interest or penalty to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes may petition the [Department] for refund or credit of the tax, interest or penalty. Except as otherwise provided by statute, a petition for refund must be made to the [D]epartment **within three years of actual payment of the tax**, interest or penalty.

72 P.S. § 10003.1(a) (emphasis added). This Court has held:

> Where, as here, a statute provides a remedy, the directions of the statute **must be strictly pursued** to obtain the remedy. Section 1504 of the Statutory Construction Act of 1972 [(Statutory Construction Act)], 1 Pa.C.S. § 1504; *Cnty. of Dauphin v. City of Harrisburg,* 24 A.3d 1083, 1090 (Pa.[]Cmwlth.[]2011).
>
> The time limitation in a tax statute **must 'be strictly enforced** to prevent any uncertainty in the budgetary planning and fiscal affairs of the Commonwealth.' *Phila. Gas Works* [*v. Commonwealth*]*,* 741 A.2d [841,] 846 [(Pa. Cmwlth. 1999), *aff'd*, 757 A.2d 360 (Pa. 2000)]. **Compliance with the time limitation in the Tax Reform Code is 'an absolute condition to obtaining a refund.'** *Id.* Section 3003.1(a) of the Tax Reform Code is a statute of repose that extinguishes entitlement to a tax refund upon expiration of the three-year time period set forth therein; it is not a statute of limitations that runs from the time of an

---

[4] In appeals from determinations of the [Board], this Court essentially acts as a trial court and exercises the broadest scope of review. Our standard of review is *de novo.* The stipulation of facts entered into by the parties is binding on them, although the Court may draw its own legal conclusions.

*Luther P. Miller, Inc. v. Commonwealth*, 88 A.3d 304, 308 n.5 (Pa. Cmwlth. 2014) (citations omitted).

3

injurious occurrence or discovery of such occurrence. Consequently, **a petition for refund filed beyond the three-year time period in Section 3003.1(a) [of the Tax Reform Code] is time-barred**. The **petitioner has the burden of establishing the timeliness** of the petition for refund.

*Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 (Pa. Cmwlth. 2015) (citations omitted; emphasis added).

MFA argues that the Board erred in finding that April 15, 2008 was the date on which MFA made its "actual payment of the tax" under Section 3003.1(a) of the Tax Reform Code. 72 P.S. § 10003.1(a). Specifically, MFA contends that since the tax to be paid was not known until its annual report was filed, its September 19, 2008 annual report filing established its tax liability and its actual payment of the tax. Thus, because September 19, 2008 was the date on which MFA made its actual payment of the tax, the September 16, 2011 Petition was timely filed within three years. We agree.

In deciding the issue before this Court, we must interpret the undefined phrase "actual payment of the tax" in Section 3003.1(a) of the Tax Reform Code. Section 1921(a) of the Statutory Construction Act states: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S § 1921(a). "A statute's plain language generally provides the best indication of legislative intent." *Bd. of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010).

Section 1903(a) of the Statutory Construction Act provides that when words in a statute are undefined, they must be accorded "their common and approved usage[.]" 1 Pa.C.S. § 1903(a). "Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance,

although such definitions are not controlling." *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006).

According to *Black's Law Dictionary* (9th ed. 2009), "payment" is the "**[p]erformance of an obligation** by **the delivery of money . . . accepted** in partial or full discharge of an obligation." *Id.* at 1243 (emphasis added). *Merriam-Webster's Collegiate Dictionary* (11th ed 2004) defines "payment" as "**the act of paying** . . . : something that is paid: PAY[.]" *Id.* at 910 (emphasis added). *Black's Law Dictionary* defines "actual" as "**[e]xisting in fact**; real . . . ." *Id.* at 40 (emphasis added). According to *Merriam-Webster's Collegiate Dictionary*, "actual" means "existing in [f]act **and not merely potentially**[.]" *Id.* at 13 (emphasis added). Based upon these definitions, the common and approved usage of the phrase "actual payment" means the delivering of money in the acceptance and performance of an obligation, rather than the mere depositing of money on account for potential future use.

The Tax Reform Code supports such a conclusion. The Commonwealth imposes corporate net income taxes under Article IV of the Tax Reform Code (72 P.S. §§ 7401-7412), and franchise taxes under Article VI of the Tax Reform Code (72 P.S. §§ 7601-7607) on entities conducting business in Pennsylvania. Section 403 of the Tax Reform Code relating to corporate net income taxes provides, in pertinent part:

> (b) It shall be the **duty** of each corporation liable to pay tax under this article **to pay estimated tax under [S]ection 3003.2 [of the Tax Reform Code] <u>and</u> to make <u>final payment</u> of tax due** for the taxable year **<u>with</u> the annual report required by this section**.
>
> (c) **The amount of all taxes**, imposed under the provisions of this article, **not paid on or before the times as above provided, shall bear interest** as provided in [S]ection 806 of the [A]ct of April 9, 1929 (P.L. 343, No. 176), known as

5

'The Fiscal Code,' [72 P.S. § 806,] **from the date they are due and payable until paid**[.] . . .

72 P.S. § 7403 (emphasis added). The report and payment requirements in Section 403 of the Tax Reform Code are incorporated into Article VI and are applicable to foreign franchise taxpayers. 72 P.S. § 7603.[5] Thus, a corporate net income/franchise taxpayer is required to make its "final" tax payment with its annual report. 72 P.S. § 7403(b). *Merriam-Webster's Collegiate Dictionary* defines "final" as "1[]a : not to be altered or undone . . . . 2: coming at the end : being the last in a series, process, or progress . . . . 3 : of or relating to the ultimate purpose or result of a process . . . ." *Id.* at 469. Accordingly, on the annual report, the corporate taxpayer affirms under penalty that its tax schedules and statements have been examined and, to the best of its knowledge, the annual report is "true, correct and complete[.]" Stip. Ex. A at 1.

With respect to estimated quarterly corporate tax payments, Section 3003.2(b)(6) of the Tax Reform Code defines "**total tax**" as "[t]he total tax **liability of the taxpayer** for the tax period **including the tax reported by the taxpayer** and settled, resettled or assessed by the [D]epartment." 72 P.S. § 10003.2(b)(6) (emphasis added). Moreover, Section 3003.2(i) of the Tax Reform Code provides:

> **Whenever the amount shown as due on the annual report**, . . . is less than the amount paid to the [D]epartment on account of that amount under this article, the **[D]epartment shall enter a credit** in the amount of the difference to the account of the taxpayer, which credit **shall be immediately subject to** application, assignment or **refund**, at the request of the taxpayer under [S]ection 1108 of . . . 'The Fiscal Code,' [72 P.S. § 1108,] or at the initiative of the [D]epartment. . . .

72 P.S. § 10003.2(i) (emphasis added).

---

[5] Article IV, Part III of the Tax Reform Code (relating to annual reports and corporate net income tax payments), 72 P.S. § 7403 is incorporated by reference into Article VI of the Tax Reform Code (relating to corporate franchise taxes). 72 P.S. § 7603.

In these subsections, the General Assembly made clear that a corporation's tax liability is not established until the corporation's annual report is filed. Thus, although April 15th is the date upon which taxes are due without interest and/or penalty, *see* 72 P.S. § 10003.2(c), the Tax Reform Code expressly affords corporate taxpayers the opportunity to make their final tax payments with their annual reports, which are filed after their tax liabilities are known, albeit subject to interest and, perhaps, penalties. 72 P.S. §§ 7403(c)-(d), 7410, 7603.

Moreover, in its brief, the Board stated that, as of April 15, 2008, MFA's payments "**sufficiently satisfied**" its 2007 Franchise Tax liability, such that "MFA was not charged any underpayment interest from [] April 15, 2008 . . . **to the actual filing date of September 19, 2008**." Board Br. at 14 (emphasis added). Thus, the Board acknowledges that MFA did not know its total tax liability as of April 15, 2008, but had paid enough to avoid interest when on September 19, 2008, it knew the actual payment due and filed its annual report.

Because it is clear that a corporate taxpayer's **annual report filing date is the date on which the corporation states and accepts to pay its tax liability**, we hold that "actual payment of the tax" cannot occur until the annual report is filed. Had the General Assembly intended for refund petitions to be filed within three years of April 15th following the applicable tax year, rather than within three years of when the taxpayer knows its tax liability, which is the annual report date, such date varying among corporate taxpayers, it would have expressly stated the same. Rather, the General Assembly did not specify the refund limitation period to commence on April 15th following the applicable tax year. Thus, strictly construing all of the relevant provisions of the Tax Reform Code, as we must, we hold that MFA's "actual payment of the tax" occurred on September 19, 2008 when it filed its annual report. Because MFA's September 16, 2011 Petition was filed within three years thereafter,

7

it was timely filed. Therefore, the Board erred by sustaining the Appeals Board's order dismissing MFA's tax refund claim as untimely.

Based upon the foregoing, we reverse the Board's order and remand this matter to the Board, and direct the Board to order the Appeals Board to decide the merits of MFA's Petition.

_____
ANNE E. COVEY, Judge

President Judge Pellegrini concurs in the result only.

Mission Funding Alpha,              :
              Petitioner     :
                               :
      v.                           :
                               :
Commonwealth of Pennsylvania,    :     No. 313 F.R. 2012
             Respondent    :

O R D E R

AND NOW, this 10th day of December, 2015, the Commonwealth of Pennsylvania Board of Finance and Revenue's March 27, 2012 order is reversed and this matter is remanded for proceedings in accordance with this opinion.

Unless exceptions are filed within 30 days pursuant to Pa.R.A.P 1571(i), this order shall become final.

_____
ANNE E. COVEY, Judge