**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MISSION FUNDING ALPHA, | : | No. 2 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 313 FR |
| | : | 2012 dated January 14, 2016, exited |
| v. | : | January 15, 2015, overruling the |
| | : | Commonwealth's exceptions and |
| | : | entering judgment of the December 10, |
| COMMONWEALTH OF PENNSYLVANIA, | : | 2015 order that reversed the decision of |
| | : | the Board of Finance and Revenue |
| Appellant | : | dated March 27, 2012 and exited on |
| | : | March 30, 2012 at No. 1118798. |
| | : | |
| | : | ARGUED: May 9, 2017 |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: November 22, 2017**

We consider the Commonwealth Court's decision that the three-year tax refund period specified in Section 3003.1(a) of the Tax Reform Code of 1971 (Tax Code), 72 P.S. §10003.1(a), begins to run on the date the corporate taxpayer files its annual tax report. We hold the Commonwealth Court erred in so holding under the circumstances of this case, and therefore reverse and remand.

Appellee, Mission Funding Alpha, is a calendar-year taxpayer that conducted business in the Commonwealth of Pennsylvania during the year ending December 31, 2007 (2007 Tax Year), and pursuant to Section 602(b)(1) of the Tax Code, was subject to the Pennsylvania Foreign Franchise Tax. 72 P.S. §7602(b)(1) (requiring foreign entities to pay franchise tax annually). The relevant statutes require that corporate

taxpayers such as appellee make installment payments of franchise taxes throughout the year, and that "the remaining portion of…the franchise tax, if any, shall be paid upon the date the corporation's annual report is required to be filed without reference to any extension of time for filing such report." 72 P.S. §10003.2(a)(2), (c)(2). In this case, appellee's annual tax report (the Report) was due to be filed on or before April 15, 2008. 72 P.S. §707 (entities liable to pay franchise tax required to file annual report on or before fifteenth of April and to pay franchise tax at the time of making the report); 72 P.S. §7403(a) (corporation liable to pay tax on or before April 15 shall file annual report); 72 P.S. §7601(b) (requiring entities to file franchise tax report annually). As of April 15, 2008, appellee had timely remitted to the Pennsylvania Department of Revenue (the Department) quarterly estimated payments totaling $430,000 for its 2007 Tax Year liability. Stipulation of Facts ¶10. A $32,297 credit overpayment was also carried forward for appellee's 2007 Tax Year liability. *Id.* at ¶11. Thus, as of April 15, 2008, appellee's estimated payments and deposited credits totaled $462,297. *Id.* at ¶12.

Without first seeking an extension of time to file its Report after the due date of April 15, 2008, appellee filed it late — on September 19, 2008 — reporting a $66,344 franchise tax liability and a $314,175 corporate net income tax liability for a total tax liability of $380,519. *Id.* at ¶¶8, 13, 14. The Department accepted appellee's reported franchise tax liability and imposed a $913 late-filing penalty because appellee had not requested a filing extension and had not filed its Report by the due date of April 15, 2008. Id. at ¶19.[1] On September 16, 2011, appellee filed a petition for refund with the

---

[1] After the Department applied all tax credits and estimated payments to the 2007 Tax Year liability, an $81,778 overpayment remained ($462,297 minus $380,519), which the Department transferred to the 2008 Tax Year. Stipulation of Facts at ¶¶16, 18. The Department did not charge appellee any interest from the due date of April 15, 2008 to the actual Report filing date of September 19, 2008. *Id.* at ¶20.

Board of Appeals, seeking a refund of the entire amount of its reported 2007 franchise tax liability ($66,344).[2]  The Board of Appeals dismissed the petition as untimely, stating it was filed more than three years after the payment date of April 15, 2008.  Board of Appeals Op. at 1.  *See* 72 P.S. §10003.1(a) (petition for refund must be filed "within three years of actual payment of the tax, interest or penalty").  Appellee then appealed to the Board of Finance and Revenue, arguing its refund petition was timely because the time to file a petition did not begin to run until its tax was defined or deemed paid, which did not occur until appellee filed its 2007 Report on September 19, 2008.  The Board of Finance and Revenue affirmed the decision of the Board of Appeals, concluding although appellee paid $66,344 in franchise tax for 2007 on the due date of April 15, 2008, the refund petition was filed more than three years after that due date, and therefore was untimely.  Board of Finance and Revenue Op. at 3 (refund petition filed "more than three years after the April 15, 2008, tax payment and report filing due date, or 153 days late").

Appellee appealed to the Commonwealth Court.[3]  Appellee argued the applicable statute of limitations for a refund claim is three years from the date of payment of tax but a tax is not deemed "paid" until amounts are applied to a definite tax liability.  According to appellee, even if estimated payments or installment payments are made, the "date of

---

[2]  Appellee sought a refund based on adjustments to capital stock value and apportionment as well as special apportionment and multiform/unrelated asset treatment.

[3] Appeals taken from the Board of Finance and Revenue to the Commonwealth Court lie in that court's appellate jurisdiction; however, review is *de novo* in nature as no record is certified from the Board.  *Tool Sales & Serv. Co. v. Com.*, 637 A.2d 607, 610 (Pa. 1993).  The court considers facts jointly stipulated by the parties.  "Any final order of the Commonwealth Court entered in an appeal from a decision of the Board of Finance and Revenue [is] appealable to the Supreme Court, as of right…."  *Wirth v. Com.*, 95 A.3d 822, 829 n.5 (Pa. 2014), *quoting* 42 Pa.C.S. §723(b).

payment" for purposes of calculating a refund claim period means the date a report or return is filed.[4]  Appellee's Petition for Review, at 5-6, *citing Trevelyan v. United States*, 219 F. Supp. 716 (D. Conn. 1963) (remittances made prior to determination of taxpayer's actual liability do not constitute payment of a tax for purpose of commencing limitations period on refund claims).  Appellee further contended such interpretation is consistent with the statute of limitations for assessments, which is three years from the date a report is filed.  *Id.* at 5, *citing* 72 P.S. §7407.3 ("Tax may be assessed within three years after the date the report is filed.").  Appellee insisted its petition for refund was timely filed because it filed its petition on September 16, 2011, less than three years after the date of payment which did not actually occur until September 19, 2008, when it filed its Report.  *Id*.

The Commonwealth Court *en banc* agreed with appellee and reversed the Board of Finance and Revenue.  *Mission Funding Alpha v. Com.*, 129 A.3d 614 (Pa. Cmwlth. 2015).  The court initially observed Section 3003.1(a), which authorizes refund petitions, provides:

> For a tax collected by the Department of Revenue, a taxpayer who has actually paid tax, interest or penalty to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes may petition the Department of Revenue for refund or credit of the tax, interest or penalty.  **Except as otherwise provided by statute, a petition for refund must be made to the department within three years of actual payment of the tax, interest or penalty.**

---

[4] At times, the parties and the court refer to statutes or case law from other jurisdictions — or from Pennsylvania in other contexts — where the term "tax return" is utilized instead of "tax report."  72 P.S. §7332(a) (taxpayer liable to pay personal income tax shall file a "tax return"); 26 U.S.C.S. §6011(a) (any person liable for any tax imposed shall make a "return").  We note the terms are used interchangeably at times, but the relevant provisions of the Commonwealth's Tax Code governing the corporate tax liability at issue here refers to "reports."  Corporate taxpayer reports are submitted on Form RCT-101 — PA Corporate Tax Report.

*Id.* at 616-17, *quoting* 72 P.S. §10003.1(a) (emphasis added). The court posited that in order to determine whether a refund petition was timely, it was required to interpret the undefined statutory phrase "actual payment of tax." *Id.* at 617. The court looked to various dictionaries to define the phrase "actual payment of tax," reasoning:

> According to *Black's Law Dictionary* (9th ed. 2009), "payment" is the "**[p]erformance of an obligation** by **the delivery of money . . . accepted** in partial or full discharge of an obligation." *Id.* at 1243 (emphasis added). *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) defines "payment" as "**the act of paying** . . . : something that is paid: PAY[.]" *Id.* at 910 (emphasis added). *Black's Law Dictionary* defines "actual" as "**[e]xisting in fact**; real . . . ." *Id.* at 40 (emphasis added). According to *Merriam-Webster's Collegiate Dictionary*, "actual" means "existing in [f]act **and not merely potentially**[.]" *Id.* at 13 (emphasis added).

*Id.* at 617-18 (emphases in original). The court concluded "the common and approved usage of the phrase 'actual payment' means the delivering of money in the acceptance and performance of an obligation, rather than the mere depositing of money on account for potential future use." *Id.* at 618. The court noted Section 403(b) of the Tax Code requires corporations to pay estimated tax and to make final payment of tax due with the annual corporate tax report, and Section 403(c) provides the amount of taxes not paid on or before the time as specified by statute shall bear interest from the date they are due and payable until paid. *Id.* at 618, *citing* 72 P.S. §7403(b), (c). Therefore, according to the court, a corporate taxpayer makes its "final" tax payment only upon filing its annual report. *Id.* at 618, *citing* 72 P.S. §7403(b) (taxpayer has duty "to make final payment of tax due for the taxable year with the annual report").[5]

---

[5] The court also addressed the quarterly estimated taxes a corporate taxpayer is required to pay pursuant to Section 3003.2. 72 P.S. §10003.2. The court noted "total tax" is defined as: "[t]he total tax liability of the taxpayer for the tax period including the tax reported by the taxpayer and settled, resettled or assessed by the department." *Mission Funding Alpha*, 129 A.3d at 618, *citing* 72 P.S. §10003.2(b)(6). The court observed Section 3003.2(i) requires the Department to enter a credit upon the taxpayer's account whenever the amount shown as due on the annual report is less
(continued…)

Based upon its reading of these statutes, the court reasoned the General Assembly intended that a corporation's franchise tax liability is not established until its annual report is filed and, although appellee's taxes and Report were due on April 15, the Tax Code permits a taxpayer the opportunity to make a final tax payment whenever it files its annual report, which may be filed **after** tax liabilities are definitively known, *albeit* subject to interests and penalties. *Id.* at 619, *citing, inter alia,* 72 P.S. §§7403(c)-(d) (penalties shall be assessed for failure to make a report) and 7410 (penalties shall be imposed for failure to file report or maintain records). The court concluded "[b]ecause it is clear that a corporate taxpayer's **annual report filing date is the date on which the corporation states and accepts to pay its tax liability**, we hold that 'actual payment of the tax' cannot occur until the annual report is filed." *Id.* (emphasis in original). The court opined if the General Assembly intended for refund petitions to be filed within three years of April 15 following the applicable tax year, rather than within three years of when the taxpayer knows its actual tax liability, which is the annual report filing date, it would have expressly stated the same. *Id.* Accordingly, the court held appellee's refund petition was timely because it was filed within three years of the filing of appellee's 2007 Report, and ordered the matter remanded for further proceedings on the merits of appellee's refund petition. *Id.* After exceptions were overruled and judgment was entered in favor of appellee, this direct appeal by the Commonwealth followed.

---

(…continued)

than the amount paid to the Department and such credit is subject to immediate refund. The court reasoned these provisions demonstrate the General Assembly "made clear that a corporation's tax liability is not established until [its] annual report is filed." *Id.* at 619.

The question presented to this Court is: "[w]here a taxpayer pays the tax on the date it is due but does not file its annual report until several months later, does the three-year refund period commence on the date the tax was paid, rather than the date that the annual report was filed?" Appellant's Brief at 4.

The Commonwealth argues the meaning of "actual payment of the tax" as used in Section 3003.1(a) should be determined from the ordinary meaning of the words as illuminated by their use elsewhere in the statute. The Commonwealth asserts the term "payment" and its cognates are used throughout the Tax Code (as well as the Fiscal Code) to denote the delivery of money to the Department, rather than the filing of an annual corporate tax report. Appellant's Brief at 12, *citing* 72 P.S. §10003.2(c)(2) ("[e]stimated tax shall be paid as follows:…Payment of estimated stock and franchise tax shall be made in equal installments…), and 72 P.S. §707 (every corporation must "compute and pay" franchise tax). The Commonwealth notes Section 3003.2(c)(2) of the Tax Code directs that after a corporation's estimated payments have been made, any remaining tax "shall be paid" when its annual report is due "without reference to any extension of time" for filing the report itself.

The Commonwealth further notes the Fiscal Code specifically provides if a taxpayer obtains an extension to file a report, the extension does not extend the date that tax is due and payable. *Id.* at 13, *citing* 72 P.S. §805 ("taxes…due the Commonwealth shall be due and payable upon the dates the reports or returns thereof are required by law to be made, and no extension of time for the filing of any report or return granted by the department, shall extend the date any tax or bonus shall be due and payable…."). The Commonwealth observes interest on unpaid taxes is keyed to the date the taxes are due and payable until paid. *Id., citing* 72 P.S. §7403(c) (amount of all taxes not paid on or before April 15, shall bear interest as provided in section 806

of the Fiscal Code from date they are due and payable until paid); 72 P.S. §806 ("All taxes due the Commonwealth shall bear simple interest from the date they become due and payable until paid…. The payment of interest, as aforesaid, shall not relieve any person from any of the penalties, commissions or additional tax prescribed by law for neglect or refusal to furnish timely returns or reports to the Department of Revenue, or to pay any claim due to the Commonwealth from such person."). The Commonwealth argues if the legislature intended the time for filing a refund to commence upon filing the annual tax report, it would have stated so as it did in Section 407.3(a), which provides the Department may assess a tax "within three years after the date the [tax] report is filed." 72 P.S. §7407.3(a). Thus, the Commonwealth contends the payment of tax is entirely distinct from the filing of an annual report and where those two events do not occur simultaneously, the three-year refund period runs from the date the tax is due.

The Commonwealth also argues *City of Philadelphia v. City of Philadelphia Tax Review Board ex rel Keystone Health Plan East*, 132 A.3d 946 (Pa. 2015) (*Keystone)* is on point*.* In that case, the taxpayer filed a report and later an amended report following an audit by the Internal Revenue Service (IRS) that revealed the taxpayer had understated its deductions and, thus, overstated its net income. The taxpayer sought a refund arguing the refund period ran from the date of its amended report. Section 19-1703(1)(d) of the Philadelphia tax code permits the filing of refund petitions within three years from the date of payment or the due date, whichever is later. PHILADELPHIA CODE §19-1703(1)(d).[6] This Court found the Philadelphia tax code provision was

---

[6] Section 19-1703(1)(d) provides:

> Every petition for refund of moneys collected by the Department on or after January 1, 1980, for or on behalf of the City or the School District of Philadelphia, including but not limited to any tax, ... shall be filed with the Department **within 3 years from the date of payment** to the City or the School District of Philadelphia **or the due date, whichever is later.**

(continued…)

unambiguous and concluded an interpretation that the refund period ran from the filing of the tax report would insert words where they do not appear. *Id.* at 952. The Court also concluded Section 19-1703(1)(d) is a statute of repose and the period to request a refund began upon payment by the taxpayer. *Id.* at 953. According to the Commonwealth, Section 3003.1(a) is similarly unambiguous and because the provision does not mention reports but ties the refund period to **payment**, the period for seeking a refund in this case began to run when appellee **paid** its tax on April 15, 2008.

The Commonwealth also asserts the Commonwealth Court erred by ignoring the plain language of the statute and instead concluding the filing of an annual corporate tax report is the same thing as actually paying tax. According to the Commonwealth, the Tax Code repeatedly treats payment and the filing of a report as two different events, even though the events may occur simultaneously. Appellant's Brief at 16, *citing* 72 P.S. §10003.1(c)(2) (franchise tax is to be paid on April 15 "without regard to any extension of time for filing" annual report). Additionally, the Commonwealth contends the Commonwealth Court misapprehended the dictionary definition of "payment," which properly is defined as "the delivery of money…accepted in partial or full discharge of an obligation." Appellant's Brief at 17, *quoting Black's Law Dictionary* at 1243. Specifically, the "acceptance" referenced in the definition is not the taxpayer's acceptance of its obligation to file an annual report, but rather the Department's acceptance of the taxpayer's money, which in this case occurred no later than April 15, 2008. The Commonwealth asserts there is no difference between the language of the Philadelphia tax ordinance — "within three years from the date of payment" — and the language of Section 3003.1(a), because both the Tax Code and the Philadelphia tax

---

(…continued)

PHILADELPHIA CODE §19-1703(1)(d) (emphasis added).

ordinance tie the start of the refund period to payment. The Commonwealth further argues that, as neither Section 3003.1(a) of Tax Code nor Philadelphia's Section 19-1703(1)(d) mentions tax "reports," the date on which a taxpayer files its report is irrelevant to determining the refund period.

The Commonwealth insists the Commonwealth Court erred in stating that Section 3003.1 as a tax statute must be strictly construed against the Commonwealth. The Commonwealth notes because the refund statute is not ambiguous and does not impose a tax, the courts are not required to strictly construe it against the Commonwealth. Appellant's Brief at 19-20, *citing Keystone*, 132 A.3d at 953-54 (only ambiguous provisions that impose tax must be construed in favor of taxpayer and refund provisions are to be strictly construed against taxpayer). The Commonwealth also argues whether the taxpayer knows the actual amount of its tax liability when it makes payments is irrelevant because the refund period, as a statute of repose, is governed by the payment date and not by the discovery rule. *Id.*, *citing Keystone*, 132 A.3d at 953 ("we conclude [Section] 19-1703(1)(d) is a statute of repose"). The Commonwealth relies upon *DaimlerChrysler Corp. v. Com.*, 885 A.2d 117 (Pa. Cmwlth. 2005), *aff'd* , 927 A.2d 201 (Pa. 2007) (*DaimlerChrysler*), which involved DaimlerChrysler's claim for a refund of sales tax paid by the original purchasers of defective vehicles the manufacturer was required to buy back under the Pennsylvania Lemon Law. The Commonwealth Court concluded the refund period specified in Section 3003.1(a) began to run when the consumer **paid** the tax at the time of purchase, even though this meant that some of DaimlerChrysler's refund claim rights expired before the right to request a refund even accrued. *DaimlerChrysler*, 927 A.2d at 201. Thus, the Commonwealth concludes appellee's knowledge of its overpayment and

refund rights is irrelevant to the running of the refund period, because the period commenced upon payment of the tax.

Finally, the Commonwealth notes the legislature amended Section 3003.1 in 1997 to add the "actual payment of the tax" language and create a single refund period for all taxes even when paid in installments.[7] Appellant's Reply Brief at 7-8. The Commonwealth denies the 1997 amendment was intended to change the triggering event from payment to the filing of the annual report. The Commonwealth rejects appellee's reliance upon various federal court cases for the contrary proposition because the language of the federal tax statute, which contemplates a refund based upon allegedly erroneous assessments by the IRS Commissioner, is substantially different from Pennsylvania's statute, which does not require action by a taxing official as a pre-condition to a refund claim. The Commonwealth notes appellee's estimated payments are not segregated or otherwise maintained in escrow by the Department, and therefore appellee has improperly characterized the estimated payments as mere deposits that do not trigger the refund period.

Appellee responds the Commonwealth Court properly determined the "actual payment" of tax occurred only when its tax liability was established by the filing of its 2007 Report and its money on deposit was applied against the established tax liability. Appellee relies upon various federal cases holding estimated payments are not "payments of taxes" for purposes of starting the refund limitation period and the

---

[7] Previously, Section 503 of the Fiscal Code provided the limitations period for refund petitions, and required a taxpayer to file a petition for refund "within two years of the payment of which refund is requested." In 1985, the limitations period was moved to Section 3003.1 of the Tax Code, and provided a petition for refund must be filed "within three years of the payment of which a refund is requested." Act of July 1, 1985, P.L. 78, 72 P.S. §10003.1. In 1997, Section 3003.1 was amended to its current language — providing for a refund "within three years of actual payment of the tax." Act of May 7, 1997, P.L. 85, 72 P.S. §10003.1.

payment of taxes does not occur until the taxpayer's liability is defined.  Appellee's Brief at 7-10, *citing, inter alia, Rosenman v. United States*, 323 U.S. 658, 661-62 (1945) (installment payments on estimated tax are held not as taxes duly collected, but as deposits made in the nature of cash bond for payment of taxes thereafter found to be due; tax obligation is not defined until government issues an assessment).

Appellee also relies upon *Calvert Distillers Corp. v. Bd. of Fin. & Revenue*, 63 Dauph. 312 (Dauph. Cnty. 1952) (*Calvert I*), *aff'd,* 103 A.2d 668 (Pa. 1954) (*Calvert II*) to support the proposition that "actual payment of tax" is different from the mere transfer of money to the Commonwealth.[8]  Appellee explains the *Calvert I* court noted the language of Fiscal Code Section 503 — which then required that a petition for refund be filed "within two years of the payment for which refund is requested" — was in direct contrast to the federal tax statute which provided a taxpayer may request a refund "within four years next after the payment **of such tax**…."  63 Dauph. Cnty. at 315-16 (emphasis added).  Appellee asserts the *Calvert I* court's conclusion that the taxpayer was entitled only to refund of payments made within two years of the filing of the refund petition but not any installments paid before that time indicates the legislature's omission of the phrase "of such tax" in Section 503 signified that Pennsylvania's time limit on tax refund petitions hinged on the date monies were paid — regardless of whether the definite tax liability had been established — because the limitations period began to run anew at the time of each installment payment.  Appellee's Brief at 12.

---

[8] The taxpayer in *Calvert* sought a refund in 1951 of taxes it erroneously paid in two installments, in 1946 and 1949.  63 Dauph. Cnty. at 313-14.  The Board of Finance and Revenue awarded a refund of the 1949 payment only, relying on the two-year statutory refund limitations period.  *Id.* at 314.  Both the Dauphin County Court of Common Pleas (which exercised jurisdiction over all tax appeals at that time), and this Court (which had jurisdiction over direct appeals from the common pleas court), affirmed.  *Calvert I*, 63 Dauph. Cnty. at 322-23; *Calvert II*, 103 A.2d 668.

Appellee further argues the legislature's amendment of Section 3003.1 in 1997 established a new statutory time limit for filing refund petitions; appellee posits by eliminating the phrase "within [two or] three years **of the payment** of which a refund is requested" and substituting the phrase "within three years of **actual payment of the tax**" in Section 3003.1, the General Assembly intended the state's taxing scheme should be more like the federal taxing scheme interpreted in *Rosenman*. Under appellee's theory, "actual payment of the tax" has a well-settled, peculiar meaning in the law, *i.e.*, applying money against a definite tax liability established by filing a tax return or report, and therefore, the Commonwealth Court's decision to commence the refund period from the time appellee filed its 2007 Report was consistent with federal precedent.

Appellee also distinguishes *Keystone*, arguing that case did not turn on the date of "actual payment of the tax." Appellee asserts the language of the Philadelphia tax ordinance — which requires the filing of a refund petition with three years from "date of payment or the due date" — is distinguishable from the Pennsylvania Tax Code, which starts the refund period at "actual payment of the tax." Appellee argues the Commonwealth improperly equates the tax due date (April 15) with the "actual payment" of tax, which it views as the filing of the Report. Appellee asserts Section 403(b) requires a corporation to make "final payment of tax due…with the annual report…" and, thus, "actual payment of tax" does not occur until tax liability is established, *i.e.*, when the annual tax report is filed. Appellee contends the Commonwealth Court properly recognized Section 3003.2(b)(6) defines "total tax" as the tax "reported by taxpayer," and therefore, payment of tax cannot be made (and a refund cannot be sought) until the tax report establishes the actual amount of tax owed.

Appellee also argues the Commonwealth Court's decision in this case is consistent with its earlier decision in *DaimlerChrysler*. According to appellee, the sole issue before the court in *DaimlerChrysler* was whether the taxpayer's due process rights were violated by enforcement of the three-year statute of limitations that expired before the right to refund accrued. Appellee asserts there was no question when the refund period began to run, *i.e.*, when the purchaser paid a definite amount of money against a definite sales tax at the time the car was purchased and registered. Appellee maintains, in this case, its "actual payment" of tax occurred when its money on deposit was applied against a definite tax liability as established by the filing of its Report in September 2008.

Additionally, appellee argues the Commonwealth Court's statutory interpretation is proper because if the three-year refund clock starts anew each time a quarterly estimated installment payment is put on "deposit," there are at least four separate dates to track in addition to credit from the prior year, attributable to several estimated payments, thus resulting in unnecessary complexity. Appellee further asserts the Commonwealth's statutory interpretation causes unwarranted ambiguity because it treats the total of the estimated payments as a lump sum, making it impossible to determine which estimated payment is attributable to the tax liability described in an annual report for purposes of determining when the refund period starts. Appellee also rejects the use of the payment due date of April 15 as the start of the refund period because this would result in two refund periods if the taxpayer paid some tax on or before April 15 and a final payment with its annual report some time later.

Finally, appellee observes the Commonwealth Court's decision is supported by law from other jurisdictions. Appellee's Brief at 27-28, *citing Hanna Min. Co. v. Limbach*, 20 Ohio St. 3d 3, 4, 484 N.E.2d 691, 692 (1985) (Ohio Supreme Court held

refund period begins when tax return is filed, not from date taxpayer remits estimated payments); N.J. Stat. Ann. §54:49–14(a) (refund petition to be filed within four years of "payment of any original or additional tax"); Tax Briefs, N.J. STATE TAX NEWS, Vol. 33, No. 4, at 9–10 (date of payment for purposes of starting refund limitations period is date return is filed).[9]

This appeal presents a legal question of statutory interpretation and, accordingly, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Com.*, 998 A.2d 575, 579 (Pa. 2010). Our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S. §1921(a). Further, every statute must be construed, if possible, to give effect to all of its provisions. *Id.* Provisions of a statute are to be construed in the context in which they appear and with reference to other pertinent provisions. *Consulting Eng'rs Council of Pennsylvania. v. State Architects Licensure Bd.,* 560 A.2d 1375, 1377 (Pa. 1989). Generally, the best indication of the General Assembly's intent is the plain language of the statute. *Dechert LLP*, 998 A.2d at 579.

The parties have advanced different interpretations of the phrase "actual payment of tax" as used in Section 3003.1(a) for purposes of defining the start of the refund period. The Commonwealth Court acknowledged "the **common and approved usage** of the phrase 'actual payment' means the delivering of money in the acceptance and performance of an obligation, rather than the mere depositing of money on account for potential future use." *Mission Funding Alpha*, 129 A.3d at 618 (emphasis added).

---

[9] The Pennsylvania Institute of Certified Public Accountants filed an *amicus* brief in support of appellee, arguing (1) the date of the payment of the tax is the date that monies are applied against a tax liability shown on a tax report; and (2) any other date is unworkable, ambiguous and unfair and inconsistent with neighboring state and federal law.

The Commonwealth requests that we adopt the ordinary meaning of the words and conclude "payment" and its cognates are used throughout the Tax Code and Fiscal Code to mean the delivery of money to the Department. Appellee urges this Court to ignore the plain language of Section 3003.1 of the Tax Code and conclude — like the Commonwealth Court ultimately did despite its recognition of common usage — that the phrase "actual payment of tax" has a different and special meaning in the law. Appellee argues "actual payment of tax" does not mean the transfer of money from a taxpayer to the Department in satisfaction of a tax liability, but rather the filing of an annual report detailing a taxpayer's specific tax liability. We decline to adopt such an interpretation.

As we have noted, Section 3003.1(a) states, in pertinent part, "[e]xcept as otherwise provided by statute, a petition for refund must be made to the department within three years of actual payment of the tax, interest or penalty." Section 3003.2 of the Tax Code provides, in relevant part:

> (a) The following taxpayers are required to pay estimated tax:
>
> * * * *
>
> (2) Every corporation subject to the capital stock and franchise tax imposed by Article VI of this act…shall make payments of estimated capital stock and franchise tax during its taxable year as provided herein.
>
> (c) Estimated tax shall be paid as follows:
>
> * * * *
>
> (2) Payment of estimated capital stock and franchise tax shall be made in equal installments on or before the fifteenth day of the third, sixth, ninth and twelfth months of the taxable year. **The remaining portion of the capital stock and franchise tax due, if any, shall be paid upon the date the corporation's annual report is required to be filed without reference to any extension of time for filing such report.**

72 P.S. §10003.2(a)(2), (c)(2) (emphasis added). These two provisions reveal the payment of tax and the filing of a tax report are distinct acts, although these acts may occur simultaneously.

At the same time, Section 403 provides, in relevant part:

(a) It shall be the duty of every corporation, liable to pay tax under this article, on or before April 15, 1972, and each year thereafter, to transmit to the department, upon a form prescribed by the department, an annual report…of net income taxable under the provisions of this article.

\* \* \* \*

(b) It shall be the duty of each corporation liable to pay tax under this article to pay estimated tax under section 3003.2 and to make final payment of tax due for the taxable year with the annual report required by this section.

(c) The amount of all taxes, imposed under the provisions of this article, not paid on or before the times as above provided, shall bear interest…from the date they are due and payable until paid,….

72 P.S. §7403(a), (b), and (c).[10]

The Commonwealth Court construed the phrase "actual payment" for purposes of defining the triggering event that starts the refund period by considering dictionary definitions of "payment" and "actual" and by examining the language of Section 403(b) and (c) of the Tax Code. Section 403(b) imposes a duty on corporate taxpayers to pay estimated tax under Section 3003.2 by that date and to make final payment of tax due for the taxable year with the annual report. Section 403(c) provides unpaid taxes shall bear interest from the date they are due until paid. The court concluded "actual payment" means the delivering of money in the acceptance and performance of an obligation, rather than the mere depositing of money, and thus the date on which the

---

[10] In 2016, Section 403(a) was amended to allow a corporation to file its report on or before thirty days after its return to the federal government is due. Act of July 9, 2016, P.L. 270, 72 P.S. §7403(a). The above-quoted language was the operative language in 2008, when appellee made the payments for the 2007 Tax Year at issue here.

corporation states and accepts its tax liability by filing an annual report is the date of "actual payment" of tax. *Mission Funding Alpha*, 129 A.3d at 617-19.

We are not persuaded by the Commonwealth Court's reasoning and instead find a more straightforward reading of the statutory language is appropriate. *Black's Law Dictionary* defines "payment" as "[p]erformance of an obligation by the delivery of money…accepted in partial or full discharge of the obligation." *Black's Law Dictionary* at 1309. Black's Law Dictionary defines "actual" as "[e]xisting in fact; real…." *Id.*, *quoting Black's Law Dictionary* at 40. The obligation at issue here is appellee's statutorily mandated duty to pay foreign franchise tax on or before April 15, 2008. 72 P.S. §10003.2(c)(2); 72 P.S. §403(b). Notably, appellee's obligation to pay the foreign franchise tax did not arise only when it ascertained its final tax liability. Appellee was actually obligated by statute to pay the foreign franchise tax on or before April 15, 2008, regardless of whether it had ascertained its final liability and filed its annual report. 72 P.S. §10003.2(c)(2); 72 P.S. §403(b); 72 P.S. §805.

In this case, because appellee paid its estimated tax in sufficient amounts and also carried forward credit from the prior tax year, the Department deemed appellee's tax obligation satisfied as of April 15, 2008, despite the fact it had not yet filed its annual report. The Commonwealth Court's interpretation that this "payment" did not start the refund period clock ignores the language of Section 3003.2(c)(2). Subsection (c)(2) is unequivocal: any portion of the franchise tax that remains due after payment of the estimated payments "shall be paid upon the date the corporation's annual report is required to be filed without reference to any extension of time for filing such report." 72 P.S. §10003.2(c)(2). The language of subsection (c)(2) thus qualifies the language of Section 403(b) providing that the taxpayer shall make payment of final tax with the annual report, and thereby specifically instructs the tax is due and payable on April 15

regardless of whether a taxpayer files a tax report. *See also* 72 P.S. §805 (amount of all taxes due the Commonwealth "shall be due and payable upon the dates the reports or returns…are required by law to be made, and no extension of time for the filing of any report or return granted by the department, shall extend the date any tax…shall be due and payable….").

Notwithstanding this straightforward interpretation of statutes intended to be read together, appellee — like the Commonwealth Court — insists "actual payment of tax" is a peculiar term of art with a special meaning. Appellee relies upon *Rosenman*, 323 U.S. at 661, for the premise estimated tax payments are mere deposits and not "actual payments of tax" that trigger the refund period. In *Rosenman*, the relevant federal refund provision provided a claim for a refund of a tax "alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax." 323 U.S. at 661. In 1934, to prevent the imposition of interest on unpaid estate taxes, the taxpayer paid estimated tax under protest prior to filing the estate's final return in 1935. Following an audit of the estate, the IRS issued a deficiency assessment against the estate in 1938, which was satisfied through application of the estimated payments and other payments. In 1940, the taxpayer filed a claim for refund based on further deductions and the IRS denied the claim because the tax had been collected in 1934, more than three years prior to the refund claim. Throughout this period, the IRS held the money in a segregated account. The U.S. Supreme Court concluded because the federal government held the payment in a special account, did not pay overpayment interest on the estimate payments, and did not consider the payment of estimated tax as "taxes duly collected," the estimated payment was "merely a 'deposit.'" *Id.* at 662. The High Court determined the 1940 refund claim was timely because the action complained of was the deficiency

assessment and until that occurred in 1938 there was no illegal or erroneous assessment.

Unlike the federal government, the Department is required to pay interest on overpayments of estimated tax and, as noted by the Commonwealth, estimated tax payments are not held in separate accounts by the Department. 72 P.S. §806.1(a)(2) (interest on overpayments of tax shall be paid and overpayments of estimated tax are "deemed to have been overpaid on the last day prescribed for filing the final return or report"); Appellant's Reply Brief at 10 (appellee's remittances to Department were not maintained in any special "escrow" or "suspense" accounts). Thus, under Pennsylvania law, the Department deems estimated tax payments to be "taxes duly collected" as of the report filing due date — in this case April 15, 2008 — and not mere deposits. Given the differences between federal and Pennsylvania law, *Rosenman* is inapposite.[11]

Appellee's reliance on *Calvert I* and *II* is similarly misplaced. At the time those cases were decided, Section 503 of the Fiscal Code provided petitions for refund "must be filed with the board within two years of the payment of which refund is requested." *Calvert II*, 103 A.2d at 670. In 1951, the taxpayer sought a refund of all the franchise tax installment payments made in 1946 and a sum paid in 1949 following settlement and resettlement of its 1946 tax year liability. The trial court held the taxpayer could recover only the sum paid in 1949 because the refund petition was filed more than two years after the 1946 installment payments. The court opined the language of Section 503 did not allow a taxpayer to recover "an entire tax erroneously paid…so long as one

_____

[11] The taxing provision at issue in *Rosenman* has since been superseded and the U.S. Supreme Court has itself cast doubt on the continuing validity of the *Rosenman* Court's reasoning given the existence of a "deemed paid" provision in the current federal tax code. *Baral v. United States*, 528 U.S. 431, 437-38 (2000) (remittance by taxpayer of estimated income tax, and remittance by taxpayer's employer of withholding tax, were "paid" on the due date of petitioner's income tax return).

or more payments on account thereof were made within" two years of the time the refund was sought. *Calvert I*, 63 Dauph. Cnty. at 322-23 ("By using the word 'payment' the legislature clearly disclosed its intention to distinguish between 'payment' and 'tax.'"). In other words, the statutory language meant each installment payment had its own refund period. This Court agreed and observed if the General Assembly intended there to be a single refund period for the entire tax the statute would have required that refund petitions be filed "within two years of the **last** payment **of the tax** of which refund is requested." *Calvert II*, 103 A.2d at 670 (emphasis in original). Notably, the current refund period is triggered upon "actual payment of the tax" and, as this language substantially conforms to the hypothetical language suggested by the *Calvert II* Court for a single refund period for the entire tax paid, appellee's reliance on these cases for its position the triggering event is the filing of a report is unavailing.

Moreover, although appellee claims the 1997 amendment to Section 3003.1 was intended to bring Pennsylvania in line with federal precedent that a tax is only "paid" when the amount is ascertained by the filing of a tax return, we read the substitution of "actual payment of tax" as the clear expression of the General Assembly's intent to provide taxpayers with the ability to request a refund of any tax overpayments in a single petition filed within three years of the date on which the Department applied funds submitted by the taxpayer in full satisfaction of its tax liability.[12]

Nor does *Hanna Mining* support the Commonwealth Court's contrary reading. In that Ohio case, the relevant statute required a refund application to be filed "within three

---

[12] Our research reveals Department policy is consistent with such an interpretation; all payments of tax, including prepayments and estimated payments, are deemed by the Department to have been paid on the due date for the filing of the annual report. Weintraub, Stewart M., Pennsylvania Tax Handbook, §16-13:1 at 979 (2017). *See also* 72 P.S. §806.1(a)(2) ("Any amount overpaid as estimated tax…shall be deemed to have been overpaid on the last day prescribed for filing the final return…").

years from the date of the illegal or erroneous payment of the tax." Ohio Rev. Code §5733.12. The Ohio Supreme Court reasoned because the tax commissioner is given three years from the date a final franchise tax report is filed to assess additional taxes it would be inequitable to require taxpayers to keep track of multiple limitations periods based on estimated installment payments and, therefore, taxpayers "who timely remit their final reports and who timely remit the tax due in estimated payments should not be denied a full three-year period to seek a refund of the final tax due." *Hanna Mining,* 20 Ohio St. 3d at 5. The court also held the refund period for installment payments of estimated tax begins to run "at the time the annual corporation report is timely filed or should have been filed, whichever is earlier." *Id.* at 6. Thus, under *Hanna Mining* the statute of limitations for a refund based on a late filed report does not begin to run on the report filing date or the payment date, but rather on the statutory due date. Thus the court's reasoning in *Hanna Mining* actually undermines appellee's position; using the rationale of that case, the statutory due date triggering the refund period in this case would be April 15, 2008.

Appellee's reliance upon New Jersey tax procedure is similarly unavailing. In New Jersey, a "taxpayer, at any time within four years after the payment of any original or additional tax assessed against him" may file a claim for a refund. N.J.S.A. §54:49-14a. However, the relevant regulation provides the "four-year statute of limitations period for filing a claim for refund commences to run from the later of the payment of tax…or from the filing of the final return…The due date of the return is deemed the payment date if filing and payment are made prior to the due date." N.J. Admin. Code §18:7-13.8(a). The Pennsylvania Tax Code does not have a similar regulation allowing the limitations period to begin upon filing of the report if filing does not coincide with payment; the General Assembly could have included such a term had it intended the

triggering act to be the **filing** of the annual report rather than the **due date** for that report.  *See, e.g.* 72 P.S. §7407.3 ("Tax may be assessed within three years after the date the report is filed."); 72 P.S. §7348(a) ("The amount of any tax imposed by this article shall be assessed within three years after the return is filed.").  We decline to supply such language where the legislature chose not to include it.  *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1274 (Pa. 2014) ("[W]e are mindful of the precept that courts cannot insert words into a statute.  Thus, we may not, under the guise of statutory construction, simply rewrite [the statute].").

Additionally, accepting either the Commonwealth Court's or appellee's interpretation of "actual payment of tax" would render nonsensical another provision in the statutory scheme — Section 3003.1(d) — and we must avoid such a result.  *See, e.g.,* 1 Pa.C.S. §1922(1) (in ascertaining General Assembly's intent we presume it did not intend a result that is absurd or unreasonable); 1 Pa.C.S. §1922(2) (courts should presume General Assembly intends the entire statute to be effective and certain).  Section 3003.1(d) provides:  "In the case of amounts paid as a result of an assessment, determination, settlement or appraisement, a petition for refund must be filed with the department within six months of actual payment of the tax."  72 P.S. §§10003.1(d).  Under Section 3003.1(d), when a taxpayer files a petition for refund, the refund period begins upon payment of the tax liability as reflected in the Department-issued assessment, determination, settlement or appraisement.  The taxpayer's obligation to pay tax arises from action taken by the Department and the calculation of final tax liability by the taxpayer and filing of a tax report are not implicated.  Therefore, appellee's assertion the phrase "actual payment of tax" means upon the filing of a corporate tax report makes no sense in the context of a refund request following the payment of tax pursuant to an assessment, determination, settlement or appraisement.

Further, "[a] voluntary payment of taxes can be subsequently recovered by a taxpayer only as a statute provides." *Calvert II*, 103 A.2d at 669; *Philadelphia Gas Works ex rel. City of Philadelphia v. Com.* , 741 A.2d 841, 846 (Pa. Cmwlth. 1999), *aff'd sub nom.*, 757 A.2d 360 (Pa. 2000) (refund of voluntarily paid tax is matter of legislative grace). Where, as here, a statute provides a remedy, the directions of the statute must be strictly pursued to obtain the remedy. 1 Pa.C.S. §1504. The time limitation in a tax statute must be "strictly enforced to prevent any uncertainty in the budgetary planning and fiscal affairs of the Commonwealth." *Philadelphia Gas Works*, 741 A.2d at 846; *Fed. Deposit Ins. Corp. v. Bd. of Fin. & Revenue*, 84 A.2d 495, 498 (Pa. 1951) ("[N]o doubt the legislature considered that to allow refunds [years after tax was paid] would create great uncertainty in the budgetary planning and fiscal affairs of the Commonwealth."). Compliance with the time limitation in the Tax Code is "an absolute condition to obtaining a refund." *Id. See also Bethlehem Steel Co. v. Bd. of Fin. & Revenue*, 244 A.2d 767 (Pa. 1968) ("Equitable principles cannot vary the statutory requirement and we lack the power to alter the explicit language of the statute."). Accepting either the Commonwealth Court's or appellee's interpretation would allow a taxpayer to delay indefinitely the filing of its annual report and, then, even after the late filing, seek a refund of tax (plus interest) accepted as paid long ago — and most likely already allocated and spent by the Commonwealth. We cannot support such a reading given that the refund limitations period is intended in part to protect budgetary certainty.[13] *Fed. Deposit Ins. Corp.*, 84 A.2d at 498.

---

[13] In her dissenting opinion Justice Mundy states our decision will preclude taxpayers from exercising their right to choose to file their taxes late. Dissenting Slip Op. at 4. We note the language of Section 3003.2(c) is mandatory — requiring that remaining franchise tax due "shall be paid upon the date the corporation's annual report is required to be filed…." No language in either Section 3003.2 or Section 7403 (continued…)

We reiterate the object of statutory construction "is to ascertain and effectuate the intention of the General Assembly." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004), *citing* 1 Pa.C.S. §§1903(a), 1921(b). "The clearest indication of legislative intent is generally the plain language of a statute." *Id.*; 1 Pa.C.S. §1903 ("[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage…"). Thus, if the language of a statute is clear and unambiguous, a court must read its provisions in accordance with their plain meaning and common usage. After our careful review of the language employed in both the Tax Code and the Fiscal Code and based on the facts before us here, we hold "the actual payment of the tax" for purposes of determining when the refund period begins is the act of transferring money or credits by the taxpayer to the Department, and the Department's acceptance of the money or credits in full satisfaction of tax liability. In this matter, the "actual payment of tax" occurred on April 15, 2008, the date tax was due and payable, and when the Department accepted appellee's estimated tax payments and credits as payment for its 2007 Tax Year liability. We further hold the filing of the annual report — when it takes place after the due date as happened here — is not the triggering event for determining whether a refund petition was timely filed. We therefore conclude appellee's refund petition was not timely filed because the three-year tax refund period began to run on April 15, 2008, and expired prior to the September 16, 2011 filing date. Accordingly, the order of the Commonwealth Court is reversed and the matter is remanded for reinstatement of the decision of the Board of Appeals.[14]

(…continued)
authorizes allowing a taxpayer to unilaterally extend the refund period relating to the payment of taxes, which as noted *supra,* is an act distinct from the filing of a tax report.

[14] We recognize appellee has forwarded an alternative argument that we should treat its petition for refund as a petition for credit; according to appellee, the three year refund period is not applicable to a petition for credit. Appellee's Brief at 28-29. The
(continued…)

Jurisdiction relinquished.


Chief Justice Saylor and Justices Baer and Wecht join the opinion.

Justice Donohue files a concurring opinion.

Justice Mundy files a dissenting opinion.

Justice Todd did not participate in the consideration or decision of this case.

---

(…continued)
Commonwealth argues appellee waived this claim by failing to request a credit when it filed its petition for refund. Appellant's Reply Brief at 14, *citing* Board of Appeals Petition Form. The Commonwealth also notes that whether a taxpayer seeks a refund or credit it must nevertheless file a petition within the time specified. *Id.* at 14-15, *citing Philadelphia Gas Works*, 741 A.2d at 847 (Section 247 of Tax Code, 72 P.S. §7247, does not provide separate time limitations for request for refund and request for credit and Board of Finance and Revenue has discretion to either give refund of taxes paid or credit taxpayer's account). Before the Commonwealth Court, the parties stipulated "[t]he sole issue in this appeal is whether [appellee] timely filed a Petition for Refund with the Board of Appeals, pursuant to 72 P.S. §10003.1(a)." Stipulation of Facts ¶6. The parties further stipulated "[i]f this [c]ourt determines that [appellee's] Petition for Refund was not timely filed with the Board of Appeals, then the decision of the Board of Appeals and Board of Finance and Revenue shall be sustained and [appellee] may not pursue any claim of relief with respect to its 2007 Tax Year Franchise Tax liability." *Id.* at ¶29. Moreover, appellee did not make this alternative argument regarding a "petition for credit" before the Board of Appeals or the Board of Finance and Review, and the Commonwealth Court did not reach it. Accordingly, we consider it waived and do not address it.