# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downs Racing, L.P., d/b/a Mohegan     :
Sun Pocono, f/k/a Mohegan Sun at      :
Pocono Downs                          :
                                      :
                v.                    :     No. 1752 C.D. 2024
                                      :     ARGUED:  December 8, 2025
Luzerne County, Luzerne County        :
Treasurer, and Luzerne County         :
Division of Budget and Finance,       :
                      Appellants      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  February 3, 2026**

Luzerne County, Luzerne County Treasurer, and Luzerne County Division of Budget and Finance (collectively, Luzerne) appeal from the order of the Court of Common Pleas of Luzerne County, granting the motion for summary judgment of Downs Racing, L.P., d/b/a Mohegan Sun Pocono, f/k/a Mohegan Sun at Pocono Downs (Mohegan).  At issue in this long-running dispute is whether Mohegan owes hotel room rental tax on complimentary rooms provided to patrons, pursuant to the Third Class County Convention Center Authority Act (Act).[1]  We affirm.

---

[1] Act of August 9, 1955, *as amended*, added by the Act of November 3, 1999, P.L. 461, 16 P.S. §§ 2399.1-2399.23.  The Act was repealed by the Act of May 8, 2024, P.L. 50, No. 14 (effective July 8, 2024), and reenacted and recodified at 16 Pa.C.S. §§ 17301-17323.  For ease of discussion, this opinion refers to the provisions of the prior Act, which were in place at the time of the assessment being appealed.

## I. The Act, Ordinance, and Regulations

The Act authorizes third class counties to impose a hotel room rental tax to, among other things, "facilitate the development of a convention facility and" promote "tourism within the county." Section 2399.2(a)(7) of the Act, 16 P.S. § 2399.2(a)(7). Section 2399.23(a) of the Act provides that the tax shall be imposed "on *the consideration received* by each operator of a hotel within the market area from each transaction of renting a room or rooms to accommodate transients." 16 P.S. § 2399.23(a) (emphasis added).[2] The Act further provides that "[t]he tax shall be collected by the operator from the patron of the room," and "[t]he rate of tax imposed . . . shall not exceed [5%]." Section 2399.23(a)-(b) of the Act, 16 P.S. § 2399.23(a)-(b).

Pursuant to this authority, Luzerne County enacted a Hotel Room Rental Tax Ordinance (Ordinance) in 1996, and subsequently promulgated Hotel Room Rental Tax Regulations (Regulations), imposing a 5% tax. *See* Reproduced Record (R.R.) at 1a-15a. Section B of the Regulations pertaining to the "Imposition of Tax" provides, in pertinent part:

> 1. <u>Rate of Tax</u>: The Hotel Room Rental Tax is imposed at the rate of five percent (5%) effective July 1, 1996 and will continue thereafter *upon the consideration received* by each operator of a hotel/inn within the County of Luzerne *from each transaction* of renting a room or rooms to a transient. As used herein, [r]enting shall mean *the act of paying or being paid consideration, whether received in cash money or otherwise for occupancy*.
>
> 2. <u>Collection of Tax by Operator</u>: The tax is to be collected by the operator of each hotel/inn, *at the time of*

---

[2] The corresponding language in Luzerne County's Hotel Room Rental Tax Ordinance (Ordinance) is nearly identical. *See* Ordinance § B.1.

*payment, from each person who pays the consideration* of renting a room.

Regulations § B.1-B.2 (emphasis added).  Section D of the Regulations pertaining to "Items Subject to Tax," states that "[t]he occupancy of any room, for consideration, . . . is subject to the tax."  Regulations § D.

The Ordinance relies on hotel operators to self-report the information necessary to calculate the tax on forms furnished by the County Treasurer. Ordinance § E.1-E.5.  Specifically, each month, an operator "shall report the amount of consideration received for the transactions during the month," and "shall compute and pay to the Treasurer the taxes shown as due on the return[.]"  Ordinance §§ E.4 & E.5.  If an operator fails or refuses to collect the tax or fails to report and remit payment of any portion of the tax, "the County Treasurer shall proceed in such manner as he may deem best to obtain facts and information on which to base his estimate of the tax due[,]" and then issue an assessment, including interest. Regulations § H.  Section J of the Regulations provides:

> It is presumed that all rooms are subject to the tax until the contrary is established by accurate records from the operator.  The burden of proving that the rent or occupancy received is not taxable is upon the operator and the operator must demonstrate same through accurate records. In any case where a hotel operator fails to maintain adequate records as required under these Regulations, any room for which there is not adequate records shall be deemed to be occupied for the entire period for which the supporting records are lacking.

The following definitions provided in Section 2399.23(j) of the Act are significant to the present dispute:

> "Consideration" shall mean receipts, fees, charges, rentals, leases, cash, credits, property of any kind or nature or other

3

payment received by operators in exchange for or in consideration of the use or occupancy by a transient of a room or rooms in a hotel for a temporary period.

. . . .

"Occupancy" shall mean the use or possession or the right to the use or possession by a person other than a permanent resident of a room in a hotel for any purpose or the right to the use or possession of the furnishings or to the services accompanying the use and possession of the room.

. . . .

"Patron" shall mean any person who pays the consideration for the occupancy of a room or rooms in a hotel.

. . . .

"Transaction" shall mean the activity involving the obtaining by a transient or patron of the use or occupancy of a hotel room from which consideration emanates to the operator under an express or an implied contract.

"Transient" shall mean an individual who obtains an accommodation in any hotel for himself by means of registering at the facility for the temporary occupancy of a room for the personal use of that individual by paying to the operator of the facility a fee in consideration therefor.

16 P.S. § 2399.23(j). The Ordinance repeats these definitions almost verbatim, *see* Ordinance § A, and the Regulations incorporate the definitions from the Ordinance, *see* Regulations § A.

## II. Factual and Procedural Background

Mohegan is a Pennsylvania Limited Partnership and casino resort in Luzerne County which includes a hotel, casino, convention center, racing operation, spa, and multiple bars and restaurants. R.R. at 86a, 183a. Mohegan admittedly

4

offers a significant number of complimentary rooms to both patrons and potential patrons, including members of Mohegan's loyalty program known as "Momentum."[3] Mohegan does so by providing recipients with an offer code which can be redeemed for a complimentary room.

For years, Mohegan self-reported and paid the tax on all its rooms, including complimentary rooms. *See* R.R. at 340a; Luzerne's Br. at 10. Mohegan stopped paying the tax on complimentary rooms in 2016 on the advice of counsel. R.R. at 340a. Two years later, Luzerne noticed a discrepancy in Mohegan's reporting, namely that it "ceased remitting tax on a category of rooms it had previously treated as taxable," that being complimentary rooms. Luzerne's Br. at 11. *See also* R.R. at 340a-41a.

After conducting a review as authorized by the Ordinance and Regulations, Luzerne issued Mohegan an assessment for $1,368,081.17 in unpaid taxes for complimentary rooms it provided to patrons from January 2016 through August 2018. R.R. at 33a. Luzerne assumed 100% occupancy for purposes of the assessment because Mohegan failed to submit any data on the actual number of complimentary rooms it provided during that time period, and Luzerne calculated the tax due based on a rate of $159.00 per night. *See* Regulations § J; R.R. at 33a.

Mohegan challenged the assessment, and an informal hearing[4] was held by Luzerne in November 2018. *See* R.R. at 40a-41a. By letter dated August 25, 2020, Luzerne affirmed the assessment, and Mohegan subsequently appealed to the

---

[3] We note that the complimentary rooms at issue here are not rooms that Momentum participants purchase using their reward dollars. *See* R.R. at 412a. Since Momentum participants pay for those rooms with reward dollars, which can be spent like money throughout the resort, Mohegan concedes that those rooms are taxable. *Id.*

[4] While Luzerne presented witnesses and evidence at the hearing, no transcript or record was made or retained.

5

trial court. R.R. at 43a, 19a-31a. Luzerne filed a motion to dismiss Mohegan's "appeal for lack of subject matter jurisdiction, arguing that the [Luzerne County Convention Center] Authority, which never sought to intervene, was a necessary and indispensable party to the action." *Downs Racing, L.P. v. Luzerne Cnty.*, 297 A.3d 20, 23 (Pa. Cmwlth. 2023) (*Mohegan I*). The trial court issued an order denying Luzerne's motion and directing Mohegan to join the Authority as a party. *Id.*

Mohegan appealed the trial court's interlocutory order to this Court and Luzerne filed an application to quash the appeal. *Id.* at 23. In *Mohegan I*, we denied Luzerne's application to quash, finding that the trial court's order was immediately appealable as a collateral order under Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 313. *Id.* at 26. We further found that the Authority was not an indispensable party because its interest was not essential to the merits of the underlying issue; therefore, we reversed the trial court's order and remanded for further proceedings on the merits. *Id.* at 27.

The parties engaged in discovery following remand, at the conclusion of which Mohegan filed a motion for summary judgment. *See* R.R. at 60a-78a. Mohegan essentially argued that the assessment is not authorized by the Act, Ordinance, or Regulations because Mohegan does not receive any consideration for its complimentary rooms. In support of this motion, Mohegan submitted excerpts from Luzerne's discovery responses, excerpts from deposition transcripts, and the parties' concise stipulation of facts (SOF).[5] This stipulation includes the following statement: "For purposes of this tax assessment appeal only, a 'complimentary room'

---

[5] The parties stipulated that Luzerne's assessment improperly included 22,746 unoccupied rooms (totaling $180,830.70 in tax) and 4,837 rooms provided to Mohegan employees or performing entertainers and their support crews (totaling $38,454.15 in tax). R.R. at 88a (SOF ¶¶ 13-18). After subtracting these amounts, the parties stipulated that the amount of tax that remains at issue is $1,148,796.86 based on 136,599 complimentary rooms. R.R. at 89a (SOF ¶ 20).

6

means any Mohegan hotel room or suite that Mohegan offers to customers or potential customers without requesting payment." R.R. at 86a (SOF ¶ 5).

In opposition to the motion for summary judgment, Luzerne argued that Mohegan received consideration for its complimentary rooms in the form of increased foot traffic, customer presence and loyalty, and surplus revenue, as well as the aesthetic benefits and increased excitement of a full casino. Luzerne's supporting evidence included discovery responses, deposition transcripts, Mohegan's own records, and the expert report of Professor Anthony Lucas, Ph.D., a tenured professor at the University of Nevada, Las Vegas, teaching graduate and undergraduate courses on various casino topics. *See* R.R. at 219a-26a. According to his expert report, Dr. Lucas was "asked to opine as to whether compensation was received by [Mohegan] in exchange for complimentary rooms provided to patrons, during the" relevant period. R.R. at 221a. Dr. Lucas opined, "to a reasonable degree of professional certainty[,] that Mohegan received value for the complimentary hotel rooms." *Id.*[6]

---

[6] Dr. Lucas later tied this conclusion to the specific definitions in the Act and Ordinance, opining

> that there are "receipts, fees, charges, rentals, leases, cash, credits, property of any kind or nature or other payment received" by Mohegan "in consideration of the use or occupancy" of a complimentary hotel room. One form of consideration is the wagers received in the casino, regardless of whether they are actually won or lost. Another form of consideration is using complimentary hotel rooms to fill the casino with players, adding to the overall aesthetic value and excitement of the casino floor. The latter is essential to the provision of an environment that meets the expectations of casino patrons. Therefore, even if one considers that the casino revenue is taxed, there is still additional value or consideration that is not taxed.

R.R. at 224a.

In November 2024, the trial court issued an order and accompanying opinion granting Mohegan's motion for summary judgment. R.R. at 404a-14a. The trial court found that the language of the Act and Ordinance is unambiguous, specifically that "[t]he plain reading of the definition of 'consideration' under the Act does not include the alleged consideration argued by Luzerne." R.R. at 410a. While the trial court agreed "that consideration does not need to take the form of a cash exchange, it does require a 'quid pro quo.'" R.R. at 411a [quoting *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 129 (Pa. 1940)]. Although Mohegan's complimentary room is an offer, there is no guarantee that the recipient will stay at the hotel, visit the casino, or spend money at all; therefore, "[t]he complimentary room is simply a gift." R.R. at 411a-12a. The trial court also rejected Luzerne's argument that there is a material dispute of fact that precludes summary judgment. R.R. at 413a-14a.

Luzerne appealed and, in compliance with the trial court's order, filed a concise statement of errors complained of on appeal, including that the trial court erred by relying on the common law definition of consideration rather than the definition found in the Act and Ordinance, and in disregarding Dr. Lucas's expert report. *See* R.R. at 445a. The trial court issued a supplemental opinion addressing these purported errors, pursuant to Pa.R.A.P. 1925(a). *See* R.R. at 444a-48a.

### III. Issues

Luzerne raises two issues on appeal: (1) whether the non-monetary value Mohegan admittedly receives in exchange for providing complimentary rooms to its loyalty members qualifies as consideration under the Act and Ordinance; and

8

(2) whether the trial court erred in granting summary judgment by resolving disputed factual issues and disregarding Luzerne's expert's report.[7]

## IV. Discussion

### A. Consideration

Luzerne first argues that the trial court erred by ignoring the statutory definition of "consideration" as set forth in the Act and Ordinance, and instead, utilizing the common law contractual meaning of the term. It is axiomatic that statutory interpretation begins with the text. *See, e.g.*, Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022) ("Only in instances where the words of a statute are not explicit, or are ambiguous, do we consider the construction factors enumerated in 1 Pa.C.S. § 1921(c)."); *Commonwealth v. Cullen-Doyle*, 164 A.3d 1239, 1242 (Pa. 2017) ("When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent."). According to Luzerne, only if a statute fails to define a term should a court turn to the principles of statutory interpretation such as affording common words their ordinary meaning. Stated differently, where a statute specifically defines a term, courts are bound by that definition and should not turn to outside legal concepts.

---

[7] In an appeal from a trial court order "granting summary judgment, our standard of review is plenary." *Carpenter v. William Penn Sch. Dist.*, 295 A.3d 22, 29 n.5 (Pa. Cmwlth. 2023) [quoting *Brewington v. City of Phila.*, 149 A.3d 901, 904 n.3 (Pa. Cmwlth. 2016)]. *See also Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 757 (Pa. 2017) (in tax appeal involving a legal question of statutory interpretation, "our . . . review is plenary"). Summary judgment is only proper when there is no genuine issue of material fact and "'the moving party is clearly entitled to judgment as a matter of law.'" *Carpenter*, 295 A.3d at 29 n.5 [quoting *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011)]. *See also* Pa.R.Civ.P. 1035.2 In conducting our review, the Court must view the record in the light most favorable to the non-moving party, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Carpenter*, 295 A.3d at 29 n.5.

Luzerne maintains that the trial court disregarded these principles as well as the statutory definition of consideration in determining that Mohegan did not receive consideration for its complimentary rooms. According to Luzerne, the Act and the Ordinance provide a broad, expansive definition of the term consideration, including "receipts, fees, charges, rentals, leases, cash, credits, *property of any kind or nature, or other payment*" received in connection with a room stay. 16 P.S. § 2399.23(j) (emphasis added); Ordinance § A. Luzerne argues that the General Assembly purposefully crafted the Act to provide a sweeping definition of consideration so as to "capture the full spectrum of value hotels receive for lodging, whether monetary or not." Luzerne's Br. at 35. Patrons do not even need to actually stay at the hotel for there to be consideration as the definition and other portions of the Act and Ordinance provide that merely acquiring the "right to use" a room is enough to trigger taxable "occupancy." 16 P.S. § 2399.23(j) (definition of "occupancy" includes "the right to use or possession" of the hotel room); Ordinance § A (same). Luzerne maintains that the plain language of the Act and Ordinance makes clear that it is the *value* a hotel receives in return for the right to occupy its rooms that determines taxability, not the labels assigned to the transaction. The trial court's failure to apply the broad, value-driven definition of consideration allowed it to bypass the factual complexity of Mohegan's loyalty program and ignore the economic benefits Mohegan receives from providing patrons with complimentary rooms, e.g., the increased excitement and more favorable aesthetic that stems from a full casino, hotel, restaurants, and entertainment venue.

Alternatively, Luzerne points out that Mohegan provides patrons with offer codes that must be redeemed for these complimentary rooms. According to Luzerne, the offer codes fit within three categories listed in the Act's definition of

10

consideration: (1) they are "credits" because Mohegan uploads the offer codes directly to a Momentum member's account[8] or to other potential patrons; (2) they are "property of any kind or nature" because they are issued digitally or by mail, are received and possessed by these patrons, and are used by them to secure lodging at Mohegan's hotel; and (3) they are "payment" because they are what members give in exchange for Mohegan's provision of something of value, i.e., lodging. The offer codes are not provided out of charity, with nothing expected in return; nor are they distributed randomly to the general public. To the contrary, Mohegan admittedly issues the offer codes after conducting a proprietary analysis as to the potential costs and benefits. The offer codes are issued selectively to certain high-value players or to specific patrons Mohegan wishes to attract to the resort. In short, Luzerne asserts that the offer codes are not gifts but rather "transactional vehicles designed to induce patron presence and spending." Luzerne's Br. at 39.

It is true that, "[g]enerally, the best indication of the General Assembly's intent is the plain language of the statute." *Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 757 (Pa. 2017). The Court also cannot ignore or sidestep the Act's definitions as they are binding. *Young's Sales & Serv. v. Underground Storage Tank Indemnification Bd.*, 70 A.3d 795, 801 (Pa. 2013) ("Where the General Assembly defines words that are used in the statute, those definitions are binding.") (citation omitted). However, we disagree with Luzerne's statutory interpretation arguments, in particular because these arguments conflate "value" with "consideration." To the contrary, we agree with the trial court that the

_____

[8] As noted above, these codes are given to both Momentum members and other potential patrons. They are different from the reward dollars which Momentum members can use to purchase goods and services, including rooms, throughout the resort and which are admittedly taxable.

11

language of the Act, Regulations, and Ordinance is clear and unambiguous and supports the determination that complimentary rooms are not subject to the tax because Mohegan receives no consideration in return.

In making its plain language argument, Luzerne ignores the most telling language in the statute, Ordinance, and Regulations. For instance, Section 2399.23(a) of the Act authorizes the tax only "on the *consideration received* by each operator of a hotel . . . *from each transaction of renting a room* or rooms to accommodate transients." 16 P.S. § 2399.23(a) (emphasis added). Furthermore, the Regulations provide that, the "[t]ax is imposed . . . *upon the consideration received . . . from each transaction* of renting a room[,]" and "[t]he tax is to be collected . . . *at the time of payment, from each person who pays the consideration*[.]" Regulations § B.1-B.2. These provisions would make no sense, let alone be impossible to implement, under Luzerne's theory that the hotel receives the taxable "consideration" in the form of the value received by the hotel from increased business and revenue generally.

The definitions of "consideration," "patron," "transaction," and "transient" all clearly require the *payment*—be it in cash or otherwise—of consideration to a hotel operator in exchange for the use or occupancy of a hotel room. For example, the definition of "consideration" specifically refers to "payment received by" a hotel operator; the term "patron" is defined as "[a]ny person who pays the consideration for" a hotel room; and "transaction" involves the consideration that "emanates to a [hotel] operator under an express or an implied contract." *See* Section 2399.23(j) of the Act, 16 P.S. § 2399.23(j); *see also* Ordinance § A. Most telling, the definition of "transient" explicitly denotes an "individual who obtains an accommodation . . . *by paying to the operator of the facility a fee* in consideration

12

thereof." *Id.* (emphasis added). When reading all of the provisions of the Act together, as we must, the requirement of **payment** becomes clear. *See, e.g.*, *Synthes USA HQ, Inc. v. Commonwealth*, 289 A.3d 846, 855 (Pa. 2023) (noting courts must read statutes in *pari materia* and a statute should "be construed, if possible, to give effect to all its provisions, so that no provision is mere surplusage") (quotation omitted). The Regulations only serve to reinforce this payment requirement, as they state that "[r]enting shall mean *the act of paying or being paid consideration*, whether received in cash money or otherwise for occupancy[,]" and that "[t]he tax is to be collected . . . at the time of *payment*[.]" Regulations §§ B.1 & B.2 (emphasis added). Here, the parties stipulated that "a 'complimentary room' means any Mohegan hotel room or suite that Mohegan offers to customers or potential customers without requesting payment." R.R. at 86a (SOF ¶ 5).

Further, the "common and approved usage" of the term consideration demonstrates that the tax cannot be assessed on complimentary rooms. As the trial court recognized, while it is well-established "that consideration does not need to take the form of a cash exchange, it does require a 'quid pro quo.'" Trial Ct. Initial Op., R.R. at 411a (quoting *Stelmack*, 14 A.2d at 129). Here, Mohegan does not actually *receive* anything from the occupants *in return for* its complimentary rooms. There is no requirement that patrons do or give anything in exchange as there is no request for or payment of money and there is no express or implied contract since there is no requirement that a patron redeem the offer. To this end, Luzerne's argument that Mohegan receives the benefits of a full and exciting hotel and casino resort is speculative. There is no guarantee that patrons will accept the offer of a complimentary room and, even if they do, they may not visit or gamble at the casino, spend money at the shops, eat at the restaurants, etc. Moreover, the benefits

13

Mohegan may potentially receive are not necessarily given by the occupants of the complimentary rooms, but by patrons of the casino in general. In short, the offer of a complimentary room is merely a gift, with nothing guaranteed to Mohegan in exchange—no quid pro quo.

While Luzerne argues that the Act and Ordinance "tax value, not labels," the term "value" is not mentioned or defined in the Act or Ordinance, let alone included in the definition of consideration. If the General Assembly had meant for the tax to be imposed on complimentary rooms it could and would have explicitly included language to this effect. Luzerne's own tax reporting form belies its value-related arguments as the form "asks only for gross receipts for the period, less claimed exempt receipts, for a total of taxable receipts." Mohegan's Br. at 21. *See also* R.R. at 104a-05a (Report of Hotel Room Rental Tax form). Luzerne's own witnesses testified that the "gross receipts" referred to on this form are the gross receipts collected by a hotel for the renting of hotel rooms, and Mohegan does not collect anything from patrons with respect to its complimentary rooms.

This leads into the more practical problem that it is impossible to determine the tax that would be due on complimentary rooms. Contrary to Luzerne's arguments, the tax is not imposed on the mere occupation of a hotel room; rather, the tax is set at 5% of the consideration received. Section 2399.23(a) of the Act, 16 P.S. § 2399.23(a) (the tax shall be imposed "on the consideration received by each operator of a hotel within the market area from each transaction of renting a room or rooms to accommodate transients"); Ordinance § B.1 ("[t]here is hereby imposed an excise tax on the consideration received by each operator of a hotel"). If that consideration is an intangible—such as the benefits that may flow from a crowded hotel and casino, including increased excitement, game play, and spending—it is not

14

possible to calculate the tax. Luzerne admittedly issued its assessment based upon an average rental rate of $159.00 per night, but it is not clear where this number came from, let alone whether that amount accurately reflects the "value" Mohegan received in return for each complimentary room. These practical issues support Mohegan's contention that the complimentary rooms it provides are simply "a marketing *expense* which Mohegan hopes will increase *gaming* revenue," which is already heavily taxed under the Pennsylvania Race Horse Development and Gaming Act (Gaming Act).[9] Mohegan's Br. at 23 (emphasis in original). As Mohegan admits, it

> provides complimentary rooms to its customers as a goodwill and marketing tool that it hopes will result in the guest spending money at the casino, resort, and entertainment facilities. If a guest in a complimentary room does utilize these other entertainment facilities, the money is not paid *in exchange for* the complimentary hotel room.

*Id.* at 24 (emphasis added). In sum, the complimentary rooms are simply gifts.[10]

Given the plain language of the Act, Ordinance and Regulations, as well as the record before us including the parties' stipulations, we find that the trial court

---

[9] 4 Pa.C.S. §§ 1101-1904. As Mohegan points out, it already pays substantial taxes on gaming revenue, guests pay tax on meals purchased on the premises, and shops collect and remit sales tax on eligible items. Luzerne lacks authority to impose tax on gaming revenue since that is explicitly governed by the Gaming Act and committed only to the Commonwealth through the Department of Revenue. *See, e.g.*, 4 Pa.C.S. § 1403 (regarding establishment of State Gaming Fund).

[10] Even if there were an ambiguity in the Act and Ordinance, "provisions that impose taxes are strictly construed in favor of the taxpayer and against the taxing authority. Accordingly, provisions defining what property is subject to the tax, as opposed to what property is 'excluded,' are interpreted strictly in favor of the taxpayer." *Greenwood Gaming & Ent., Inc. v. Dep't of Revenue*, 90 A.3d 699, 710-11 (Pa. 2014) (citations omitted). *See also* 1 Pa.C.S. § 1928(b)(3) (statutory "[p]rovisions imposing taxes" "shall be strictly construed").

15

correctly held the tax is not applicable to complimentary rooms because Mohegan does not receive any payment in exchange for the rooms, i.e., consideration.

### B. Purported Factual Dispute and Expert Report

Luzerne next argues that, at a minimum, genuine issues of disputed facts preclude the grant of summary judgment and the trial court erred by stepping into the role of factfinder. First, the trial court acknowledged that whether Mohegan actually collected the tax on complimentary rooms (and presumably failed to remit the tax to Luzerne) was unclear. Trial Ct.'s Suppl. Op. at 4-5 (R.R. at 447a-48a) ("the deposition transcripts indicate that the witnesses were unsure about the collection of the [t]ax"). However, as the trial court explained, this information would not assist the fact finder in reaching a decision one way or the other because the sole question before the trial court was whether the tax is applicable to complimentary rooms, not whether Mohegan ever collected the tax on these rooms. Thus, whether tax was collected is not a material issue, the dispute over which would preclude summary judgment. *See, e.g.*, *Pyeritz v. Commonwealth*, 956 A.2d 1075, 1079 (Pa. Cmwlth. 2008) ("only disputes as to material issues of fact bar summary judgment" and "[a] fact is material only if it directly affects the disposition of the case") (citations omitted).

Finally, Luzerne maintains that the trial court erred by, admittedly, disregarding the report of Luzerne's expert. Luzerne maintains that Dr. Lucas was not retained to interpret the Act or Ordinance, or to opine on the legal definition of consideration. Rather, "he was retained to 'opine as to whether compensation was received by [Mohegan] in exchange for complimentary rooms provided to patrons.'" Luzerne's Br. at 50 (quoting R.R. at 221a). Dr. Lucas provided this assessment "based on industry norms and economic realities," given his experience in the casino

16

industry. Luzerne's Br. at 50. According to Luzerne, whether Mohegan received anything in return for the complimentary rooms is a factual issue, completely distinct from the legal issue of whether the value received qualifies as consideration under the Act and Ordinance.

Contrary to Luzerne's argument, the trial court *did* consider and address Dr. Lucas's report. *See* Trial Ct.'s Suppl. Op. at 3 (R.R. at 446a). The trial court specifically determined that Dr. Lucas was retained to consider, and his report ultimately opined as to whether Mohegan received consideration in exchange for its complimentary rooms. *Id.* "Whether a contract is supported by consideration presents a question of law[,]" *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 601 (Pa. Super. 2006) [citing *Davis & Warde, Inc. v. Tripodi*, 616 A.2d 1384 (Pa. Super. 1992)],[11] and "[i]t is well-settled that an expert is not permitted to give an opinion on a question of law." *Waters v. State Emps. Ret. Bd.*, 955 A.2d 466, 471 n.7 (Pa. Cmwlth. 2008). Moreover, "trial courts have sound discretion to admit or preclude expert testimony." *Nazarak v. Waite*, 216 A.3d 1093, 1111 (Pa. Super. 2019) [citing *Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649 (Pa. Super. 2005)]. For these reasons, the trial court did not abuse its discretion by "disregarding" Dr. Lucas's report.

Accordingly, the order of the trial court is affirmed.


**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[11] While not binding, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downs Racing, L.P., d/b/a Mohegan :
Sun Pocono, f/k/a Mohegan Sun at :
Pocono Downs :
                       :
            v.            :    No. 1752 C.D. 2024
                       :
Luzerne County, Luzerne County :
Treasurer, and Luzerne County :
Division of Budget and Finance, :
               Appellants    :

# **O R D E R**

AND NOW, this 3rd day of February, 2026, the order of the Court of Common Pleas of Luzerne County is hereby AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita
